Commonwealth *v.* Stelma, Appellant.

Argued May 10, 1937.   Before SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*John L. Pipa, Jr.,* for appellant.

*Robert M. Fortney,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BARNES, June 25, 1937:

The defendant was convicted of the murder of Joseph Doyle in the Borough of Mt. Carmel, Northumberland County.   The jury found him guilty of murder in the first degree and imposed the death penalty, to which the defendant was thereafter sentenced.   The Commonwealth alleges that the murder was committed in the perpetration of a robbery.   The defendant claims he acted in self-defense.

Early on December 5, 1936, Doyle was found unconscious in a gully close to the stadium fence in the borough of Mt. Carmel.   He was removed to the Fountain Springs Hospital, near Ashland, Schuylkill County, where he died two days later from a severe skull fracture, concussion and shock due to external violence.

In two signed confessions defendant has admitted that he inflicted the injuries which resulted in Joseph Doyle's death.   The first statement was given by him to

Joseph Zecoskie, a Justice of the Peace in Mt. Carmel, to whom, on December 12, 1936, defendant voluntarily surrendered himself. At trial this statement was offered in evidence without objection by the defendant. On the day he surrendered, Stelma was delivered into the custody of the state police who escorted him to the gully where Doyle's body had been found, for the purpose of securing the weapon used in the commission of the crime. Upon arriving at the place, Stelma indicated to the officers the spot where he had left Doyle lying, and said to them he had there hit Doyle on the head with a rock. He turned over several rocks, and, finally selecting one stained with blood, said: "This is the rock I hit him with." Defendant was then taken by the state police to the District Attorney at his office in Shamokin, where he signed a second confession admitting that he had attacked Doyle with a stone. At the trial this confession was received over objection, defendant alleging that, while he was not improperly treated in the District Attorney's office, he signed the second confession through fear of the state police officers who had abused and maltreated him earlier in the day at the Tharptown Barracks.

In each statement Stelma admits striking Doyle several times. In the first confession he says: "When we reached Olive Street, an alley right across from the Stadium, Doyle made a pass at me and hit me in the chest. I was surprised but turned and hit him a punch with my fist and knocked him down. I was in a drunken rage and picked up a stone and hit him several times in the head with a stone. I then left him lay there and went home, undressed and went to bed." In the statement signed in the District Attorney's office, he describes what took place as follows: "When Joseph Doyle and I came to a point past Second Street and after I struck him in the face he fell to the ground. I was mad all the time and I did not know what I was doing, but I reached down and picked up a rock and

started hitting him on the head. I do not know how many times I hit Joseph Doyle on the head, but it was at least three or four times. As Joseph Doyle was lying there on the ground I went through his pockets. I was that mad that I thought I would take his money. I did not find any money, but I did find a pack of Granger tobacco, partly filled, which I took. I remembered seeing some money in Joseph Doyle's hand down on Third Street, so I opened his hand and took out of it $1.35 which I put in my pocket. I left Joseph Doyle lying on the ground near the stadium fence and walked down Birch Street to my home and went to bed." The defendant at trial contended that he did not strike Doyle in an effort to perpetrate a robbery, but solely because he was afraid that Doyle intended to attack him.

The defendant was represented at the trial, which began on February 1 and terminated on February 3, 1937, by D. Webster Shipman, Esquire, of Sunbury, who had been appointed his counsel by the court. After the verdict of guilty was returned, no motion for a new trial was made on behalf of defendant. On February 10, 1937, Mr. Shipman died from pneumonia. The passing of sentence upon defendant was deferred by reason of the death of his counsel. Meanwhile, the defendant had secured the services of other counsel. On March 8, 1937, he petitioned the court for a rule to show cause why a motion for a new trial should not be filed nunc pro tunc. He set forth in the petition that during the course of the trial his counsel was so ill that he was unable properly to represent him, and, because of his illness, he had failed to file a motion for a new trial within the time required. The rule was granted, returnable March 15, 1937. The Commonwealth filed an answer averring that defendant had been competently represented throughout the proceedings, and that Mr. Shipman suffered no illness during the trial.

In support of his motion for a new trial and arrest of judgment, the defendant assigned some twenty reasons,

relying principally upon the contention that the Commonwealth failed to establish first degree murder. On March 15, 1937, the return day of the rule, the motion for new trial was overruled by the court in banc, and the defendant was thereupon sentenced.

This appeal from the judgment and sentence of the court raises three questions for our consideration: First, was there sufficient evidence to justify a verdict of first degree murder with the death penalty; second, were there reversible errors in the charge of the trial judge; and, third, was the defendant deprived of a fair trial because of his counsel's illness.

First, it is the contention of defendant that there is not sufficient evidence to support a verdict of first degree murder. The Commonwealth having established by the verdict that the homicide was committed in the perpetration of a robbery, it is deemed to be murder in the first degree, as the statute expressly provides: "All murder . . . which shall be committed in the perpetration of, or attempting to perpetrate, any arson, rape, robbery, burglary or kidnapping, shall be deemed murder in the first degree . . .": Act of March 31, 1860, P. L. 382, Section 74, as amended by the Act of May 22, 1923, P. L. 306, Section 1; *Com. v. Ferko,* 269 Pa. 39; *Com. v. Lessner,* 274 Pa. 108; *Com. v. McManus,* 282 Pa. 25; *Com. v. Lawrence,* 282 Pa. 128; *Com. v. Vasbinder,* 292 Pa. 506; *Com. v. Sterling,* 314 Pa. 76; *Com. v. Thompson,* 321 Pa. 327. The defendant's argument that the intention to rob originated subsequent to the assault upon the deceased need not be seriously considered in view of the verdict of the jury. Moreover, even though such were the case, it is immaterial when the design to rob was conceived, if the homicide occurred while defendant was perpetrating or attempting to perpetrate a robbery. Where the killing occurs in the perpetration of any of the crimes specifically named in the statute referred to, the intent to kill is immaterial. Such considerations do not affect the situation here presented

because the circumstances leading up to the attack on Doyle indicate an assault with an intent to rob, and the defendant has twice confessed his crime in writing. The question of defendant's guilt and the degree of the crime are primarily for the jury to determine, and upon appeal this Court will not arbitrarily substitute its judgment for that of the jury, even if it had the power to do so: *Com. v. Harris*, 314 Pa. 81, 82; *Com. v. Thompson*, supra, (p. 332).

Secondly, the objections of the defendant to the charge of the trial judge are three in number: (a) that the trial judge incorrectly instructed the jury concerning the admissibility of the defendant's second statement, given to the District Attorney in Shamokin; (b) that the trial judge failed properly to charge the jury concerning the effect to be given character testimony; (c) that the charge of the trial judge amounted to a peremptory instruction to find the defendant guilty of murder in the first degree.

The charge of the trial judge concerning the disputed second confession of the defendant was without error. The portion of the charge of which the defendant complains reads as follows: "If you find that the statement in the District Attorney's office, as I said to you before, was given by reason of fear on the part of the defendant, *and that the same is not true,* then you will, of course, not consider it in passing upon the guilt or innocence of the defendant." The defendant argues that the test is not whether the statement is true or untrue, but whether it was given voluntarily or was obtained by duress. But when the portion of the charge about which complaint is made, is read in connection with the following excerpt from the charge, it will be seen that the court fairly and completely defined voluntary and involuntary statements. It charged as follows: "If the statement was secured in this way—in other words, if he was beaten in the barracks, was called a liar and was beaten to such an extent that he was obliged to admit and say that

which the officers ordered him to say—then the statement would not be a voluntary statement but would be involuntary by reason of having been forced from him, and should not under such circumstances be considered by you in any way in connection with passing upon the guilt or innocence of the defendant." The portion complained of cannot be read separate and apart from the portion quoted above, and when both are considered together it is clear that the jury was properly instructed concerning the weight to be given to such confessions: *Com. v. Bryson,* 276 Pa. 566; *Com. v. Welch,* 291 Pa. 40; *Com. v. Thompson,* supra. There is accordingly no merit in the argument that the jury was misled thereby.

In the portion of the charge relating to character testimony, complaint is made that the court committed error when it charged the jury as follows: ". . . you must take that testimony into consideration in passing upon the question of the good character of the defendant, and then decide for yourselves whether or not this testimony as to good character *will raise a doubt in your minds* that such a man with a reputation such as the defendant's would likely commit such a crime as that with which he stands charged." It is urged that the word "reasonable" should have preceded the word "doubt" in the instruction quoted. The charge of the trial judge on this point was a sufficient and correct statement of the weight to be given to evidence of good character in a murder case. However, it seems to us that without the qualifying word "reasonable" the defendant was helped rather than prejudiced. The defendant cannot complain merely because the instruction was not expressed in the precise language and form he desired. This objection is best answered by the decision of this Court in *Com. v. Beingo,* 217 Pa. 60, 62, where it is said: "The first assignment of error complains that the judge did not charge the jury that 'Evidence of good character, in itself, by the creation of a reasonable doubt may work the acquittal of the defendant.' But the trial judge is

under no obligation to use any particular set form of words. All that the prisoner is entitled to, even on trial for murder, is that the jury shall be accurately instructed as to the law applicable to every material phase of the case which the jury may under the evidence be authorized to consider. . . . If the jury is so instructed the duty of the judge is correctly performed, and if counsel for the prisoner want instruction in some preferred form they should request it in the usual way." The only question upon appeal will then be whether the charge afforded an accurate guide for the jury to follow. We are of opinion that the instruction in question does meet this test, and no reason for a reversal is presented.

Again referring to the character testimony, complaint is made that the court in its charge limited the testimony with relation to appellant's prior commission of crime solely to the question of punishment. The portion of the charge referred to reads as follows: "While the testimony with relation to his prior commission of crime was introduced by the Commonwealth and the defendant—by the defendant through at least one witness, Zecoskie—on the question of the character of the defendant, it can be nevertheless taken into consideration by you in passing upon the question of punishment. However, as stated to you before, this testimony cannot be considered by you in any respect with the exception of character *unless you first find beyond a reasonable doubt that the defendant is guilty of murder in the first degree.*" There is no error in this portion of the charge. It is in accordance with the principles laid down by this Court in the following cases: *Com. v. Williams,* 307 Pa. 134; *Com. v. Kurutz,* 312 Pa. 343; *Com. v. Harris,* supra; *Com. v. Thompson,* supra. In *Com. v. Harris,* supra, it was held that evidence in proper form of prior convictions of crime is admissible in homicide cases for the sole purpose of aiding the jury in determining the

penalty to be inflicted if the jury finds defendant guilty of murder in the first degree.

It is asserted on behalf of defendant that the charge was a peremptory direction to find the defendant guilty of murder in the first degree. But a peremptory instruction is one which in a homicide case takes away from the jury the duty to fix the degree of the crime. Here, under the charge, the jury was free to determine the degree of defendant's guilt, and the trial judge several times in the course of his charge called that fact to its attention. He said: "If you are convinced beyond a reasonable doubt as to the defendant's guilt, then it is your duty to convict him, and to fix the degree you are convinced beyond a reasonable doubt he is guilty of; . . . On the other hand, if the Commonwealth has failed to convince you beyond a reasonable doubt as to the guilt of the defendant on any of the charges which I have enumerated to you, then it is just as much your duty to acquit him." The decision of this Court in *Com. v. McManus,* supra, has settled this question. In that case it is said (p. 29) : "So, although the trial judge repeatedly called the attention of the jury to the fact that under the law a murder committed in the perpetration of a robbery was of the first degree, he did not take from them the right to fix the degree; and it is only when he does that the defendant is deprived of his statutory right of having the jury fix the degree of his crime: *Com. v. Ferko,* 269 Pa. 39; *Com. v. Chapler,* 228 Pa. 630; *Com. v. Frucci,* 216 Pa. 84; *Com. v. Fellows,* 212 Pa. 297; *Lane v. Com.,* 59 Pa. 371. Where the trial judge leaves the jury free to ascertain the degree of the crime, he does not transgress the statute by pointedly calling its attention to the fact that the law makes a murder committed in the course of a robbery a capital offense: *Com. v. McCloskey,* 273 Pa. 456; *Com. v. Romezzo,* 235 Pa. 407.; *Com. v. Kovovic,* 209 Pa. 465; *Com. v. Sutton,* 205 Pa. 605; *Com. v. Sheets,* 197 Pa. 69." We find no basis in the record for this complaint.

Thirdly, the contention of the defendant is that the trial was not a fair one because of the illness of his counsel. The court below, which was thoroughly familiar with the circumstances surrounding the trial, has specifically found that the physical condition of defendant's counsel did not in any way affect his competent representation of defendant. In its opinion the court said: "The court was intimately acquainted with D. W. Shipman for a number of years, observed him during the entire trial of the case, conversed with him on both the first and second days after the trial. . . . There was no complaint of illness by D. W. Shipman at the time the case was attached. He insisted on its being proceeded with. No complaint was made during the trial, neither could the court observe any suffering on the part of Mr. Shipman because of illness. . . . Immediately after the close of the Stelma case, D. W. Shipman, Esq., tried a case as counsel for a defendant in the same court." In our review of the record we are unable to find any indication that the defendant was not adequately represented at the trial. On the contrary it affirmatively appears that Mr. Shipman conducted the defense as an able and competent lawyer.

The conclusion we have reached makes it unnecessary to discuss the remaining assignments of error. In our opinion the evidence discloses all the elements of murder committed in the perpetration of, or attempting to perpetrate a robbery. The jury has sentenced the defendant to death. The penalty is warranted by the record and the sentence must stand. Any further plea in mitigation must be to the pardoning power: *Com. v. Harris,* supra, (p. 85). Accordingly, all assignments of error are overruled.

The judgment is affirmed and the record is remitted to the court below for the purpose of execution.