Commonwealth ex rel. Carey, Appellant, *v.* Montgomery County Prison Keeper.

Argued April 21, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*H. R. Back,* for appellant.

*J. Stroud Weber,* District Attorney, for appellee.

Opinion by Mr. Justice Allen M. Stearne, May 29, 1952:

This is an appeal from an order of the Court of Common Pleas of Montgomery County dismissing relator's petition for a writ of habeas corpus.

Relator was convicted of murder in the first degree with the penalty fixed by the jury at death. The crime was the killing of a police officer, whose death was caused by gun shot wounds while he and another police officer were pursuing relator from a burglary, in order to place him under arrest. There was ample circumstantial evidence of relator's guilt which was confirmed by his written admissions. On appeal this Court affirmed the judgment and sentence, reported in 368 Pa. 157, 82 A. 2d 240.

By a petition filed in this Court on October 29, 1951, relator sought to invoke the extraordinary aid of the Act of April 22, 1903, P. L. 245, sec. 1, 19 PS 861, which empowers us to "grant a rule for new trial, nunc pro tunc," whenever we are convinced that *after discovered evidence* exists which "is ground for substantial doubt as to the guilt of any prisoner convicted of murder of the first degree". On November 15, 1951, we entered a PER CURIAM order refusing the petition. The allegations of after discovered evidence were wholly insufficient, even if proven, to constitute evidence of such quality and therefore could not raise substantial doubt as to guilt.

The present petition is an elaboration of the earlier one. The essence of each is the allegation that "petitioner has since discovered . . . that the statement made by the ballistic expert was entirely untrue in that the kind of bullet described [the fatal bullet] could have been fired, and most likely was fired, from a gun held in the hands of a policeman. . ." The statement that the bullet "most likely was fired" from the policeman's gun is obviously no more than a possible conclusion

from the evidence sought to be introduced. The sole evidence which relator now alleges that he will be able to produce if given a new trial is expert testimony to contradict the evidence of the Commonwealth's witness that the fatal bullet could not have come from the policeman's gun. Relator's counsel, *at trial*, attempted by cross-examination to contradict the Commonwealth's expert testimony that the two types of guns required different size cartridges. In addition to the vigorous cross-examination relator's counsel went so far as to try to force the regulation cartridge into the special revolver offered in evidence. The evidence now belatedly sought to be adduced would be but the further attempt at contradiction.

The writ of habeas corpus may not be substituted for an application for a new trial. In *Commonwealth ex rel. Smith v. Ashe, Warden et al.*, 364 Pa. 93, 101, 71 A. 2d 107, Chief Justice MAXEY quoted as follows from *Commonwealth ex rel. McGlinn v. Smith*, 344 Pa. 41, 24 A. 2d 1: " 'The writ of habeas corpus can never be used as a substitute for an appeal. . . . The regularity of proceedings is not to be attacked in this way': . . . 'The writ of habeas corpus should be allowed only when the court or judge is satisfied that the "party hath probable cause to be delivered" ': 3 Blackstone 132, . . . 'A judgment cannot be lightly set aside by collateral attack even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity': Johnson v. Zerbst, 304 U. S. 458, . . . ."

It requires no elaboration to demonstrate that any refutation of the expert ballistic testimony adduced by the Commonwealth was a *defense on the merits* which should have been presented at the trial of the cause, *unless a failure of due process prevented its presentation.* Present counsel for relator recognizes this circumscription of the scope of a habeas corpus proceed-

ing. He seeks, however, to find an invasion of relator's constitutional rights in the failure of *trial counsel* to establish the possibility that the fatal bullet came from the policeman's gun. He somehow ascribes this failure to the fact that trial counsel never *personally* visited relator in prison, although his court-appointed associate did so on numerous occasions. He states in his brief: "Investigators and assistants, of course, furnish trial counsel with invaluable aid, but he alone, by frequent talks with the defendant, learns the defendant's mannerisms, and much of the facts needed first hand to present the case at the Bar of the Court. *Anything less than this is a deprivation of due process.*" (emphasis supplied)

This argument is fallacious and implausible. No case is cited by counsel which remotely supports such a doctrine. It is true that the accused in a capital case is entitled to the assistance of counsel. In Pennsylvania this assistance is assured to the indigent by the Act of March 22, 1907, P. L. 31, amended by the Act of April 6, 1949, P. L. 406, 19 PS 784. Pursuant to that act, counsel who tried the instant case beginning on February 6, 1950, were appointed by the court on September 14, 1949. This right to counsel extends to all stages of the proceeding: *Powell v. Alabama,* 287 U. S. 45, 53 S. Ct. 55. It includes the right to counsel of choice if request is timely made: *House v. Mayo,* 324 U. S. 42, 65 S. Ct. 517. It has never been construed to include a right to counsel sufficiently astute to present every defense which may *possibly* occur by hindsight to counsel subsequently employed and skillful enough to defend each issue in the manner which seems most effective to such subsequent counsel.

Equally inapposite are cases cited by counsel which involve " 'knowing use' by the State of perjured testimony to obtain the conviction and the deliberate suppression of evidence to impeach that testimony. . .":

*Mooney v. Holohan,* 294 U. S. 103, 110, 55 S. Ct. 340. See also: *Hysler v. Florida,* 315 U. S. 411, 62 S. Ct. 688. The case of *U. S. ex rel. Almeida v. Baldi,* 195 F. 2d 815 (C. A. 3), decided March 27, 1952, is obviously not in point. No suppression of evidence nor overreaching of any kind by the prosecuting authorities is alleged or even suggested in the instant case.

Relator's entire case rests on the proposition that he was deprived of due process of law because trial counsel assigned to an associate the task of visiting relator in prison and assembling the evidence necessary for the defense. We unhesitatingly reject this proposition. More extensive charges of dereliction of duty by counsel were rejected by the District Court of the United States for the Western District of Pennsylvania in *U. S. ex rel. Thompson v. Dye,* Civil Action No. 10,303. In an opinion filed March 14, 1952, Judge MARSH said: "As indicated above, with a life at stake, we thought that a hearing upon the averments of the petition was imperative. By so doing, however, *we are not to be understood as condoning the practice of permitting convicts to put their counsel on trial after adverse results of their own trials have been reached.* This particularly applies to assigned counsel in a capital case whose task is peculiarly onerous, thankless, and fraught with apprehension. A federal court can not be used to measure the diligence used in preparing such a case for trial in the state court by counsel of relator's own choice; neither can it be used to try his legal capacity or ability in the trial of such case nor to examine his conscience."

"We are now of the opinion that *our responsibility to this relator terminated with:*

*"First—the finding,* which fact was also admitted, *that competent legal counsel selected by relator was assigned to represent him and was given adequate op-*

*portunity to consult with him and prepare the case.* As stated in Foster v. Illinois, 332 U. S. 134, 137 (1947), 'process of law in order to be "due" does require that a state give a defendant ample opportunity to meet an accusation.' The state court certainly afforded relator this opportunity in the instant case.

"*Second—the finding that the trial itself was not a sham or a counterfeit of justice.* As stated in Diggs v. Welch, supra, [148 F. 2d 667], at page 670, 'The only practical standard for habeas corpus is the presence or absence of judicial character in the proceedings as a whole.'" (emphasis supplied) Fulfillment of these two requirements is clearly established by the record in the instant case.

The order denying the writ is affirmed.

————

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I believe, as does the majority of the Court, that defendant's counsel suspends his argument on a very weak thread, but I would not break off that thread without a hearing before the court below. Since the issue is one of such moment—nothing less than life and death itself—it would be worth the time and trouble to see what defense counsel has in the way of evidence which could possibly upset the verdict of the jury which assessed the supreme penalty for the defendant.

While the defendant's guilt is unquestioned, it cannot be doubted that if there really existed evidence that his revolver was not the one which killed the policeman, the jury could well have fixed the penalty at life imprisonment, instead of death.

In the *Almeida* case, referred to in the majority opinion, the same question was involved: Did the bullet which killed the victim come from the defendant's or

from a policeman's pistol? And on that subject the United States Circuit Court said: "Who killed Almeida was a relevant issue, as to penalty to be imposed by the jury at the trial, perhaps the most relevant one. Under the Act of June 24, 1939, the jury had the power of life or death over Almeida. . . There could be no avoidance of this issue and there was none. This is why the Commonwealth endeavored to prove that Almeida or one of his confederates shot Ingling and why Almeida's counsel tried to show that Ingling came to his death by a bullet fired by a member of the police force."

Although this Court is morally certain that the defendant received at the trial every consideration to which he was entitled in law, I would nevertheless, because he is now on his way to the electric chair, halt that final march for a few moments to determine whether what seems very improbable could possibly have any merit in fact. The delay could not materially affect any one adversely, and a re-establishment at the hearing that the alleged additional evidence could not change the verdict of the jury would provide an additional assurance of truth to the solemn pronouncement of death.

In the absence of a hearing on the question raised by defendant's counsel there is the possibility of argument that his contentions have been admitted because not denied. The Circuit Court said in the *Almeida* case on that subject: "We cannot determine with absolute certainty the reason for the refusal of the writ. Our difficulty in determining why the Supreme Court of Pennsylvania refused the writ is enhanced because the Court took no testimony and made no findings. Under such circumstances the allegations of the petition that vital evidence 'was wilfully concealed' must be taken to be true since no hearing was had."

Of course, this case is not analogous to the *Almeida* case because there has been no charge of suppression

here. Nevertheless I believe, in spite of every indication that nothing can come of granting the relator's writ, that the inconvenience of having a hearing thereon is not so great as not to compensate fully for it in the further assurance that justice has been done.

And then, on the other hand, should the hearing really produce something which would establish (while not disturbing the finding of guilt of which there is no doubt) that the defendant's weapon did not kill the policeman and this fact should finally reduce the penalty from death to life imprisonment, there would certainly be no one to complain.