Commonwealth *v.* Hart, Appellant.

Argued March 15, 1961.   Before JONES, C. J., BELL,
MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*H. David Rothman,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with him *William Claney Smith,* Assistant District Attorney, and *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BELL, May 22, 1961:

Defendant Hart* was found guilty of murder in the first degree by a jury which imposed a penalty of life imprisonment. Defendant appealed from the judgment and sentence. He alleges four reasons: (1) The evidence was insufficient to establish that the killing occurred in the perpetration of a robbery within the meaning of the Felony-Murder Rule; (2) The Court erred in admitting into evidence in rebuttal of defendant's testimony, the transcribed testimony of a tape recording of defendant's pre-trial conversation with the Assistant District Attorney; (3) Defendant was denied a fair trial because of the ineffectiveness of his counsel; and (4) Defendant's rights against self-incrimination were violated by the Assistant District Attorney when he obtained a confession.

In order to determine whether there was sufficient evidence to establish a robbery within the meaning of the Felony-Murder Rule, it is necessary to consider the statute, the authorities, and the evidence. The Penal Code, Act of June 24, 1939,** §701 provides: "All murder which . . . shall be committed in the perpetration of, or attempting to perpetrate any . . . robbery . . . shall be murder in the first degree." Robbery is defined by §704 of the Code as follows: "Whoever robs another . . . or assaults any person with intent to rob him, or by menace or force, demands any property of another, with intent to steal the same . . ."

In *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861, the Court said (page 208): " '. . . " 'It is clearly

---

* A five year parolee.

** P. L. 872, 18 PS §4701.

settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: [citing 10 recent cases].' " ' "

If the law were otherwise it would be impossible in many cases where there were no eyewitnesses, to convict a criminal. It is rare that a criminal ever discloses in advance or sends a telegram expressing his criminal intentions.

"The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true *all the evidence upon which, if believed,*\* the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, i.e., the murder of Max Kravitz: [citing 11 prior decisions of this Court]": *Commonwealth v. Kravitz,* supra (page 201).

The following is a brief summary of what the jury could justifiably have found from the evidence: Defendant and Patricia K. lived together. He rented her out as a prostitute. Querey, the deceased victim, after his mother's death, came from North Carolina to Pennsylvania to collect her life insurance. He collected the insurance and on his way home engaged Patricia through a cab driver for purposes of intercourse. The price was $50. He paid her the $50 and also bought her some presents. Patricia remained some time and after it was over went back to the Naples Restaurant to meet defendant. She gave defendant $50. He became very angry because his price was $50 an hour and she had stayed three hours. Defendant shouted at her and said "You are going out and see that man with me." He said the man was trying to get something for nothing.

---

\* Italics throughout, ours.

Patricia was afraid to tell defendant that Querey had bought her presents because he had told her that if she ever let anybody buy her anything he would beat her—which he had already done on a prior occasion. Defendant and Patricia, at his insistence, went to the Airport to see Querey to get the additional money to which he claimed he was entitled. They knocked on Querey's door and telephoned repeatedly but unsuccessfully. Defendant insisted they try once again and after defendant banged very loudly on Querey's door he forced Patricia to call Querey once more. Querey then opened the door slightly. Defendant pushed the door open and pushed Patricia inside. Then Querey asked: "What's this all about?" Defendant answered "I think you owe this girl some money." Querey denied knowing Patricia and told defendant to get out. Patricia begged defendant to leave the room, but defendant replied *he wanted that money.* Querey threatened to call the police. He went to the phone and defendant followed him. They began struggling over the telephone. Patricia begged defendant to leave Querey alone. Querey started to put his leg in his trousers and at that point defendant, who was 6 feet 4 inches tall and weighed 170 pounds, started hitting Querey in the face with his fists. Patricia screamed at defendant, who repeatedly told her to be quiet and threatened to hit her too if she were not. Querey, who was about 5 feet 8 inches tall and weighed 150 pounds and was further handicapped by putting on his trousers, just stood there while defendant beat him until he fell to the floor. While he lay there defendant kicked him in the back of the head—which was later proved to be the cause of death. Then defendant bent down, and while Querey was unconscious, took the wallet out of Querey's pocket, removed four (or more) $50 bills from the wallet, and threw the wallet between Querey's legs.

Patricia at that point ran to the elevator, followed by defendant. He told her that he had gotten over $300. Defendant then concocted several lies for Patricia to tell, including a story that Querey had beaten her. Defendant soon became scared, hid, dyed his hair, and several days later fled with Patricia and another friend to New Orleans. In his confession to the district attorney (which was freely made after due admonitions and warnings) he admitted that he had gotten $200; that he had struck Querey and while Querey was unconscious but still living had taken his money.

Defendant contends that the above mentioned facts cannot amount to a felony murder because the Commonwealth failed to prove that he "had any preconceived intention to rob" Querey when he went to his room; that the robbery was merely "an afterthought" which was formulated after the beating occurred.

The Commonwealth's evidence to prove both robbery and murder* was direct and overwhelming. Not only did Patricia see and testify to the beating, kicking and robbery by defendant, but defendant freely admitted it to the district attorney, who testified in behalf of the Commonwealth. Defendant in his testimony at the trial admitted striking Querey with his fist but denied taking any money from Querey, denied kicking him, and testified that he made up the story to protect and help Patricia. He likewise testified that he never lived with Patricia nor received any money from her (except once inadvertently), but he just liked to protect her. On cross-examination he was unable to recall or remember many of the incriminating statements he had

---

* Defendant's malicious conduct was such that he could have been indicted for and found guilty of burglary or, even without the robbery or burglary, of murder in the second degree. *Commonwealth v. Dorazio*, 365 Pa. 291, 300-301, 74 A. 2d 125; *Commonwealth v. Schultz*, 168 Pa. Superior Ct. 435, 79 A. 2d 109; cert. denied 342 U. S. 842.

made to the district attorney or to the assistant district attorney. A reading of the record demonstrates beyond any possible doubt that the jury could have found that he was an evasive, lying witness.

Defendant's highly technical argument amounts to this: Unless the Commonwealth proves that the intention to commit a robbery was formed before the beginning of the fatal assault, the evidence cannot amount to a murder which was committed in the perpetration of a robbery. In other words, defendant would require a televised stop-watch in every robbery or felony-killing to prove that the felonious intent existed before the attack. It is rare, we repeat, that a criminal telephones or telegraphs his criminal intent and consequently such intent can be properly found by the jury from the facts and circumstances in a particular case. In the instant case the facts and circumstances, particularly defendant's belligerently expressed intent to get the money (to which he said he was entitled) out of Querey, followed by his use of force to obtain it, were amply sufficient to justify a jury in finding the necessary criminal intent beyond a reasonable doubt. There is no authority to support defendant's proposition—indeed there are two authorities, although none are needed, to the contrary.

A similar contention was twice made and rejected by this Court. In *Commonwealth v. Homeyer*, 373 Pa. 150, 94 A. 2d 743, defendant was convicted of murder in the first degree (with penalty of death) upon proof that the head of his wife had been severed from her body and encased in concrete in the cellar of defendant's home. Defendant testified that his wife had been taking sleeping pills for 5 years because of sickness and high blood pressure, and that on her birthday he went to a store to purchase a cake for her. When he returned he found her dead on their bedroom floor. Defendant testified that on the floor by her side he

found one sleeping pill and an empty bottle which had contained twenty sleeping pills. Eighteen such pills would have been a fatal dosage to a person in the physical condition of Hannah Homeyer. He further testified that upon discovering his wife's body he was seized with panic and in order to avoid responsibility for her death, decided to dispose of her remains, which he did by dismembering her body and burning certain portions of it. In that case defendant contended that the Commonwealth failed to prove either a preconceived intent or any crime whatsoever. Defendant's conviction was sustained. That case also reiterated the well settled principle (1) that the fabrication of false and contradictory statements by an accused criminal and (2) flight, are evidence from which a jury can find a guilty intent or, as the case may be, a felonious act.

In *Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906, defendant signed a confession in which he stated that after his victim had hit him in the chest he knocked him down with his fist and then in a drunken rage picked up a stone and hit him in the head several times with the stone. As the victim lay on the ground, defendant took money from his pockets, but he claimed he never intended to do this until after the victim was lying unconscious or dead. The Court in sustaining a conviction of murder in the first degree with penalty of death, said (page 321) : ". . . The defendant's argument that the intention to rob originated subsequent to the assault upon the deceased need not be seriously considered in view of the verdict of the jury. Moreover, even though such were the case, it is immaterial when the design to rob was conceived, if the homicide occurred while defendant was perpetrating or attempting to perpetrate a robbery. Where the killing occurs in the perpetration of any of the crimes specifically named in the statute referred to, the intent to kill is immaterial. Such considerations do not affect the situ-

ation here presented because the circumstances leading up to the attack on Doyle indicate an assault with an intent to rob, . . ."

The law which has been in existence for many centuries in England and for ages in our Country, was enacted for the safety and protection of peaceable citizens of each community and we will not permit it to be thwarted or evaded by such a far-fetched and realistically-absurd construction of The Penal Code.

Hart's second contention is that the Court erred in admitting into evidence the transcribed testimony of a tape recording of parts of defendant's confession with the assistant district attorney after his arrest but before trial. Defendant did not know that his confession with the district attorney was being recorded. The rule is accurately stated in *Commonwealth v. Bolish*, 381 Pa. 500 (page 524), 113 A. 2d 464: "In Commonwealth v. Clark, 123 Pa. Superior Ct. 277, 187 A. 237, President Judge KELLER wisely said, page 285: '. . . The phonograph, the dictaphone, the talking motion picture machine and similar recording devices, with reproducing apparatus, are now in such common use that the verity of their recording and reproducing sounds, including those made by the human voice in conversation, is well established; and as advances in such matters of scientific research and discovery are made and generally adopted, the courts will be permitted to make use of them by way of presenting evidentiary facts to the jury.'

"We therefore hold that tape recordings are admissible in evidence when they are properly identified and are a true and correct reproduction of the statements made, and when the voices are properly identified."

In the instant case a stenographer transcribed the tape recordings and the Commonwealth in rebuttal of defendant's fabrications offered part of the statements by the testimony of the stenographer. Trial counsel

for defendant said he did not wish to hear the tape recording but believed the stenographer's notes were accurate and she was truthful. It is quite likely that trial counsel's position in this matter was taken because defendant's voice and other parts of his confession would, if introduced in evidence, be extremely harmful to his defense. We find no error on this point.

Defendant's third contention is that he was denied a fair trial because he was denied the effective assistance of counsel. Defendant at first refused counsel but subsequently changed his mind and requested the Court to appoint as his counsel Armin Friedman. Friedman, who was an able, experienced lawyer in the county of trial, was appointed by the Court more than four weeks prior to trial. He saw the defendant every day from that time until trial. Two or three days before trial H. David Rothman, an attorney, sought to become counsel, allegedly at defendant's request. The Court appointed Rothman as an investigator to assist Friedman. Rothman then asked for a continuance, which the Court refused because counsel of defendant's choice had been appointed by the Court over four weeks prior to trial. Rothman contends that Friedman did not interview a number of witnesses whom he should have interviewed—this was disputed—and disagreed with Friedman about several trial tactics. These facts, without more, are neither a sufficient reason for continuance nor for the grant of a new trial. Succeeding or other counsel, especially where defendant has been convicted (or lost his case) can always discover tactical or strategical or other errors which he believes his predecessor (or superior or associate) counsel had committed. If that were sufficient ground for a new trial there would never be an end of litigation. A defendant in a capital case is entitled to assistance of counsel at all stages of the proceedings, including the right to counsel of his choice, if the request is timely made and the accused is

willing to pay such counsel. However, when an accused is unable to engage and pay the cost and expense of a counsel of his choice or does not desire or, for any reason, is unable to do so, the Court will appoint, *in its discretion,* proper counsel for him, and that right and power in the Court will not be cause for reversal unless the appointment constituted a palpable abuse of discretion.

In *Commonwealth ex rel. Carey v. Montgomery County Prison Keeper,* 370 Pa. 604, 88 A. 2d 904, the Court said (page 607) : ". . . the accused in a capital case is entitled to the assistance of counsel. In Pennsylvania this assistance is assured to the indigent by the Act of March 22, 1907, P.L. 31, amended by the Act of April 6, 1949, P.L. 406, 19 PS 784. Pursuant to that act, counsel who tried the instant case beginning on February 6, 1950, were appointed by the court on September 14, 1949. This right to counsel extends to all stages of the proceeding: Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55. It includes the right to counsel of choice if request is timely made : House v. Mayo, 324 U.S. 42, 65 S. Ct. 517. It has never been construed to include a right to counsel sufficiently astute to present every defense which may possibly occur by hindsight to counsel subsequently employed and skillful enough to defend each issue in the manner which seems most effective to such subsequent counsel."

Even more apt is the following quotation from *Commonwealth v. Thompson,* 367 Pa. 102, 79 A. 2d 401 (certiorari denied 342 U.S. 835), (pages 106-107) : "The constitutional right of the accused to be represented by counsel gives him the right to choose, at his own cost and expense, any lawyer that he may desire. When, however, he is unable to do so or is destitute or without means to employ counsel of his own choosing, the court will appoint counsel for him whose statutory compensation and personal expenses are payable by the

county. The custom of the court to assign counsel in capital cases is an ancient one and was provided for by the law of this State long before the adoption of its present Constitution or of the 14th Amendment to the Federal Constitution: . . . We might well end discussion of this complaint here and dispose of it on the ground that the defendant made his choice and he must abide by it.

"There is nothing in the record to show that the defendant's counsel did not properly prepare for trial. The appellant's present counsel assumes that there were important witnesses who might have been called whose evidence would have been material, but that is not established."

An additional point has been raised by defendant, namely, that defendant's rights against self-incrimination were violated by the assistant district attorney.*

The gist of this contention is that the assistant district attorney in obtaining a confession of the robbery had lulled defendant into a sense of security by not explaining to him the felony-murder doctrine. Defendant had previously voluntarily confessed the robbery and the assault to the district attorney and he knew he was being charged with robbery and murder. He was offered counsel which, at that time, he refused; he was advised of his rights and was warned that anything he said would be used against him. His confession to the assistant district attorney was the day after his confession to the district attorney. We have examined the record and are convinced that he was not over-reached by the assistant district attorney.

Judgment of sentence affirmed.

---

* This contention was considered so trivial that it was not mentioned in the brief of the district attorney.

DISSENTING OPINION BY MR. JUSTICE COHEN:

Defendant requested a charge to the effect that if the intention to commit a robbery were formed and the actual robbery was indulged in after the fatal assault had been committed, then the killing was not raised to murder in the first degree by the Felony Murder Statute. I think the defendant was entitled to such a charge and I do not think that *Commonwealth v. Stelma,* 327 Pa. 317, 192 Atl. 906 (1937), is adverse authority.

As Chief Justice JONES said in *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472 (1958): "In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice.* . . . 'It is necessary . . . to show that the conduct causing death was done in furtherance of the design to commit the felony. . . .' " Thus, a charge which would require the jury to find the presence of malice at the *time* of the killing necessary to raise the killing to murder in the first degree should have been afforded the defendant.