418 A.2d 312

COMMONWEALTH of Pennsylvania, Appellee,

v.

Gary D. WATERS, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Gary D. WATERS, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1980.

Decided July 15, 1980.

Reargument Denied Sept. 10, 1980.

88

Gregory V. Smith, Chief Public Defender, George E. Lepley, Jr., Williamsport, for Waters.

Robert F. Banks, First Asst. Dist. Atty., for Com.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

EAGEN, Chief Justice.

This involves two appeals stemming from the prosecution of Gary D. Waters on several charges following a criminal episode in Lycoming County. One appeal has been filed by Waters, and the other by the Commonwealth. To clarify the issues, we detail the background garnered from the record.

On April 13, 1976, Waters and Paul Allen agreed to commit armed robberies in the central Pennsylvania area. The two had recently returned to their joint home in East Berlin, Pennsylvania,[1] from Las Vegas where they had lost most of their money in an attempt to implement Allen's scheme for winning at dice. Allen already owned a .22 calibre pistol, and the two men purchased a rifle. They practiced firing the weapons that afternoon. After placing the weapons in the Allen car, the two men and their families drove to the home of a friend in Williamsport where the

---

1. This was actually the home of Paul Allen and his family. Waters' wife was the sister of Allen's wife.

family members were dropped off. During the drive and several stops at homes of acquaintances, both men consumed alcoholic beverages.

Allen and Waters then proceeded to the Williamsport apartment of Diane Buck who was known to Allen. Allen suggested they go in "and maybe get a piece of ass and little bit of money." When Allen was unable to break in the door, Waters opened it with a karate kick. Once inside, the men proceeded to a bedroom where they found Diane Buck and Terry Brennan in bed nude. Allen fired a shot between the couple, took Diane Buck from the bed, and, for the next one and one-half hours, pushed, beat, and shoved her around the apartment while attempting, unsuccessfully, to rape her. During this time, Waters kept guard over Brennan and took his cash and watch. At some point, when Waters left the room to get a cigarette, Allen entered the bedroom and shot Brennan in the neck with the pistol. Later, when all four persons were in the bedroom, Allen forced Diane Buck onto the bed with Brennan, who was injured and bleeding, and ordered her to ask him about his injuries. He also ordered Waters to rub Diane Buck's stomach and Buck to "shake it 'round like you enjoy it." He then took Buck out of the room and continued his efforts to rape her leaving Waters in the room with Brennan.

Waters whispered to Brennan he would get him help and would try to mislead Allen by saying in a loud voice that he was going to finish Brennan off. He did so and shot his weapon into the air. He exited the room, told Allen he had killed Brennan, and encouraged him to leave. Allen went to check whether Brennan was really dead. By Diane Buck's account, Allen threatened to kill both her and Waters if Brennan was not, in fact, dead. As Allen entered the bedroom, Waters shot him from behind. Allen died instantly.

Waters advised Diane Buck to call an ambulance, but, when she could not compose herself sufficiently to complete the call, Waters himself called the police. He remained at the apartment until the police arrived and, later that night,

gave a statement to the police concerning the evening's events. Brennan's money was found in Waters' pocket, and his watch was later found in the holding cell in which Waters was detained that evening.

On April 14, 1976, Waters was charged with the murder of Allen, but this charge was later withdrawn by the district attorney who concluded this killing was justifiable homicide. At the same time, Waters was also charged with the attempted murder of Brennan, burglary, theft, and conspiracy. His pleas of guilty to these charges were accepted by the court on May 21, 1976, and sentence was deferred. However, when Brennan died on May 29 from the gunshot wound inflicted by Allen, Waters was rearrested and charged with the murder of Brennan.

On September 13, 1976, Waters requested permission to withdraw the guilty pleas entered on May 21, which request was objected to by the Commonwealth and denied by the trial court on September 20, 1976. Sentence was imposed on these convictions later the same day. Waters filed a timely appeal in the Superior Court.

On October 1, 1976, Waters filed a motion to quash the murder charge on the ground of double jeopardy. The court denied this motion on November 2, 1976. On November 13, 1976, Waters was convicted by a jury of murder of the second degree for the killing of Brennan and was later sentenced to life imprisonment. Waters' appeal in this Court (No. 392) is from that judgment.

On April 28, 1978, the Superior Court reversed the judgments and convictions based on Waters' guilty pleas of May 21, 1976 and remanded the record to the trial court with directions to permit the withdrawal of the guilty pleas;[2] the trial court subsequently followed this mandate. Waters then filed a motion to quash the charges of attempt–murder of Brennan, burglary, theft, and conspiracy on the grounds of double jeopardy and a violation of *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432 *(Campana I), vacated*

---

**2.** This Court denied the Commonwealth's petition for allowance of appeal on October 31, 1978.

414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973); *reinstated on remand* 455 Pa. 622, 314 A.2d 854 *(Campana II), cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974). On March 14, 1979, the trial court rejected the motion to quash for the reasons asserted by Waters, but did quash the attempt–murder charge ruling sua sponte that the attempt–murder offense merged with the murder offense. The Commonwealth filed an appeal in the Superior Court challenging the correctness of the order quashing the attempt–murder charge. The Superior Court certified that appeal here for disposition (No. 207).

### *Waters' Appeal (No. 392)*

■ First, Waters claims his right not to be placed twice in jeopardy was violated by his trial for murder after he had been charged with and plead guilty to criminal attempt–murder, burglary, theft, and conspiracy, citing *Campana.*[3] We adopted the rule of joinder in *Campana* pursuant to our supervisory powers over Pennsylvania courts, not as a matter of constitutional law. We espoused a rule requiring "a prosecutor to bring, in a single proceeding, all known charges against a defendant arising from a 'single criminal episode.' " *Campana I,* supra 452 Pa. at 253, 304 A.2d at 441. [Footnote omitted.] At the time Waters' guilty pleas were accepted by the trial court, May 21, 1976, Brennan had not yet died. Therefore, the offense of murder was not known to the district attorney at that time, and the Commonwealth could not have instituted and prosecuted the murder charge in the first proceeding. *Commonwealth v. Washington,* 481 Pa. 474, 393 A.2d 3 (1978).

Waters implies[4] that, had his motion to withdraw his guilty pleas been granted by the trial court prior to imposi-

**3.** There is no question of waiver resulting from Waters' failure to file an appeal from the trial court's order denying his motion to quash the murder charge because this motion was denied *prior* to our decision in *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977), or on November 2, 1976. See *Commonwealth v. Potter,* 478 Pa. 251, 256 n. 3, 386 A.2d 918, 920, n. 3 (1978).

**4.** The argument lacks clarity to say the least.

tion of sentence on these convictions, the district attorney could have brought the charges to which he had plead guilty in the same proceeding wherein he was charged with murder.

Such reasoning is devoid of validity. The issue presented is whether the murder charge could have been brought when Waters plead guilty to the other charges. Since Brennan was then still alive, the answer is clearly no. Hence, there was no violation of *Campana*, and the court correctly denied the motion to quash on this ground.

Waters also implies that the failure of the Commonwealth to join in his petition to withdraw his guilty pleas and/or to oppose sentencing on those convictions created a bar to the prosecution for murder under *Campana* or principles of double jeopardy because death had occurred when his petition to withdraw was denied and when he was sentenced. The argument is without merit.

In a *Campana* context, where the victim died subsequent to trial but prior to disposition of post–verdict motions and sentencing on lesser offenses, we expressly indicated that the failure to oppose sentencing and impliedly indicated that the failure to join in post–verdict motions created no bar to a subsequent prosecution for murder. Hence, the *Campana*-based argument has already been rejected.[5]

■ Insofar as the argument is based on principles of double jeopardy, the same reasoning applies. The Supreme Court of the United States in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion, but see cases therein cited), clearly indicated that a prior prosecution on a lesser offense does not bar prosecution on a greater offense where the greater offense is not completed or where the facts necessary to the greater were not discovered despite due diligence before the prosecution

5. Any distinction between the failure to join post–verdict motions and the failure to join a petition to withdraw pleas would create an unwarranted distinction between the two situations based solely on an accused's choice of whether to be tried or whether to plead to the initial charges.

on the lesser offense. The Court's reasoning is the same as that used by us in *Commonwealth v. Washington,* supra, although it does not go as far as that set forth in *Commonwealth v. Washington,* supra, i. e. it does not deal with the disposition of post–verdict motions or sentencing after the greater offense is completed or discovered. But we know of no reason not to apply the reasoning of *Commonwealth v. Washington,* supra, to arguments based on double jeopardy principles and numerous reasons justifying doing so.[6]

■ First, as pointed out, *Commonwealth v. Washington,* supra, and *Jeffers v. United States,* supra, are in accord as to their initial reasoning and nothing in *Jeffers v. United States,* supra, suggests that an initial prosecution on lesser charges which begins without creating a bar to a subsequent prosecution on a greater charge should somehow created a bar as it is pursued because the facts necessary to establish the greater offense are completed or discovered during the course of the initial prosecution. Second, even if the greater crime becoming complete or being discovered during the course of an initial trial on lesser charges would warrant a mistrial to avoid successive prosecutions, a petition to withdraw, post–verdict motions, and sentencing do not constitute a prosecution. A petition to withdraw and post–verdict motions are a review of the propriety of the already completed prosecution; and, sentencing is merely the imposition of punishment for a conviction already obtained. Hence, since the initial prosecution is permissible, *Jeffers v. United States,* supra, and the latter events do not constitute prosecutions, no multiple prosecution question is presented.

Hence, there was no violation of the principles of double jeopardy, and the court correctly denied the motion to quash on this ground.

■ In support of his position that a new trial is necessary, Waters complains, inter alia, that the trial court erred

**6.** While the relevant considerations underlying *Commonwealth v. Campana,* supra, and principles of double jeopardy may differ in another context, instantly we perceive no consideration which warrants a different approach in resolving the issue presented.

in refusing a certain requested instruction to the jury. Specifically, Waters requested the court to charge, during its instructions on the law of felony–murder, that the Commonwealth was required to show "the conduct causing the death was done in furtherance of the design to commit the felony."

█ The court refused to so charge and indicated it would give appropriate instructions. A careful study of the charge in its entirety discloses the court, in both specific and general terms, told the jury that, before Waters could be found guilty of felony–murder in connection with Brennan's killing, it would have to be convinced beyond a reasonable doubt that an act of Allen caused Brennan's death; that this act of Allen was intentional, knowing, reckless or negligent; and, that Allen's act occurred while Waters was an accomplice in the commission of or attempt to commit robbery, rape, or burglary. Waters' complaint is that the court did not instruct that Allen's act which caused Brennan's death had to have been done in furtherance of the felony.[7] We are constrained to agree that the charge did not cover the point requested; that the requested instruction is a correct statement of the law; and, that the failure to so charge constitutes reversible error.[8]

█ We have indicated that the new Crimes Code, Pa.C. S.A. § 101 *et seq.*, has modified prior law with regard to accomplice liability for a felony–murder little, if at all. *Commonwealth v. Allen*, 475 Pa. 165, 379 A.2d 1335 (1977) (plurality opinion, Nix, J. joined by Eagen, C. J. and O'Brien,

7. In so arguing, Waters claims this would have supported a theory that Allen's act of shooting Brennan was not done in furtherance of the felony or felonies to which he was an accomplice and that, hence, he was not guilty of felony–murder.

8. Because we sustain this assignment of error, we need not reach the additional claims of error asserted by Waters, namely: (1) the rejection of certain defense evidence at trial indicating Allen's prior propensity for aggression and violence; and, (2) the ruling of the trial court that the mandatory life sentence provisions of the Crimes Code, 18 Pa.C.S.A. § 101 *et seq.*, are constitutional.

J.; concurring opinion, Roberts, J.).[9] Under prior law, the responsibility of persons, other than the slayer, for a homicide committed in the perpetration of a felony required proof of a conspiratorial design by the slayer and the others to commit the underlying felony *and* of an act by the slayer causing death *which was in furtherance of the felony.*[10] See, e. g., *Commonwealth v. Allen*, supra; *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Williams*, 443 Pa. 85, 277 A.2d 781 (1971); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958). Cf. *Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971).

Conceding the point for charge requested by Waters was not covered in the court's jury instructions, the Commonwealth argues the act of the slayer need not be in furtherance of the felony, but need only have occurred while the slayer and others were engaged in a felony, i.e. need only have occurred during the perpetration or commission of a felony. In support of its position, the Commonwealth cites language found in many of our decisions. Typical is the

**9.** As we said in *Commonwealth v. Allen*, supra, 475 Pa. at 173, 379 A.2d at 1339, 18 Pa.C.S.A. § 2502 "merely distinguishes between degrees of murder but does not attempt to define murder itself." Hence, the new Crimes Code in classifying felony–murder as murder of the second degree merely "incorporate[d] the existing law of murder." Id.

**10.** Were it otherwise, an accomplice to a robbery would be guilty of felony–murder if one of his cofelons during the course of the robbery looked out a window, saw a passerby down the street, and shot and killed him even though the passerby had no connection to the robbery whatsoever. Obviously, even though an accomplice knows or should know those connected to a robbery may be killed during the course of a dangerous felony, see *Commonwealth v. Legg*, 491 Pa. 78, 417 A.2d 1152 (1980) (J. 167, filed this day), he should not be held accountable for that which he cannot *at least foresee.* Compare accomplice liability under 18 Pa.C.S.A. § 306 which requires the intent to promote or facilitate the commission of the offense with which one is charged and thereby establishes a policy of limiting such criminal liability.

Also, for a discussion of the purposes of and policies for the limitation in the text and other limitations, see N. Morris, *The Felon's Responsibility for the Lethal Acts of Others*, 105 U. of Pa. 50, 69–74 (1956), and see *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970), which clearly indicates a policy of limiting application of the felony–murder rule.

following from *Commonwealth v. Yuknavich,* 448 Pa. 502, 507, 295 A.2d 290, 293 (1972):

> "Clearly, where a killing occurs in the commission of a felony, all who participate therein are equally guilty of murder."

But this language in *Commonwealth v. Yuknavich,* supra, as well as similar language in other cases, must be viewed in the context of what was then being discussed. In context, the particular language in *Commonwealth v. Yuknavich,* supra, and in other cases merely stated a general principle to repudiate a specific argument then under discussion where it was unnecessary to limit the general principle with the qualification that, in order to impose liability on one who was not the actual slayer, the act of the slayer causing death must have been done in furtherance of the felony. In short, in most instances where the language appears, whether the act causing the death had to be done in furtherance of the felony was not at issue. Indeed, in *Commonwealth v. Yuknavich,* supra, this Court stated the general principle in a discussion which rejected an argument that malice should no longer be imputed and continued after the quoted language to point out that the evidence which established the guilt of Yuknavich, who was not the slayer, of felony–murder showed the act causing death occurred in furtherance of the robbery plan. Hence, while cases may contain language which at first blush supports the Commonwealth's position, the language was never meant to dispense with the requirement that the slayer's act be in furtherance of the felony.[11]

In further support of its position, the Commonwealth cites decisions of this Court such as *Commonwealth v. Stelma,* 327 Pa. 317, 192 A. 906 (1906), *Commonwealth v. Hart,* 403 Pa. 652, 170 A.2d 850 (1961), and *Commonwealth v. Slavik,* 437 Pa. 354, 261 A.2d 583 (1970), wherein we held that, if a homicide occurs in the perpetration of or an attempt to

---

11. There are opinions of this Court in which the language clearly supports the Commonwealth's position. See, e. g. *Commonwealth v. Melton,* 406 Pa. 343, 178 A.2d 728 (1962). But, in most cases, the language could have been qualified if such qualification was needed to dispose of the issue upon which we now focus.

commit a robbery or other statutorily enumerated felonies, a conviction of felony–murder will be sustained regardless of when the intent or common design to rob was conceived and then asks the question: how can this be reconciled with a ruling that the act causing the death must be in furtherance of the felony? In other words, how can it be said that the act of the slayer which causes the death must be in furtherance of the felony if the intent or common design to commit the felony need not be conceived until after this act is committed?

In *Commonwealth v. Legg,* 491 Pa. 78, 417 A.2d 1152 (1980) (J. 167 filed this day), we held that henceforth the *intent* to commit a felony must be formulated when the act of killing occurs in order to apply the felony–murder rule and departed from the cases relied on by the Commonwealth. The same reasoning which compelled our decision in *Commonwealth v. Legg,* supra, dictates the conclusion that the *common design* to commit the underlying felony must exist when the act of slaying occurs in order to establish an accomplice's liability for felony–murder. But, as with *intent,* the existence of a *common design* when the slaying occurred may be inferred from the circumstances or acts of the slayer and accomplice committed shortly after the slaying, but this is far different from saying the common design to commit the underlying felony may be conceived after the act causing death.[12] Hence, the cases relied on by the Commonwealth no longer present a logical obstacle to our ruling here.

Accordingly, Waters must be granted a new trial.

### Commonwealth's Appeal (No. 207)

The Commonwealth's appeal is from that portion of the trial court's order which granted Waters' motion to

12. The Commonwealth argues no evidence existed to support a claim that the act was not in furtherance of the felony, and no charge was therefore necessary. We must disagree. The requirement is a necessary finding to establish Waters' guilt, and the facts could have supported an inference that Allen's act was completely independent of the felony in that it was wholly unconnected to the felony.

quash the charge of attempt–murder.[13] The trial court granted the motion to quash the attempt–murder charge on the basis that it merged with Waters' conviction for murder. The court did so even though Waters "failed to specifically allege that his prosecution for any of these charges should be barred by the doctrine of merger."

We have examined the motion to quash and agree it did not raise any merger issue, rather it raised a claim under *Campana*.[14] We have held that our courts should not raise issues *sua sponte*. *Commonwealth v. Branham*, 467 Pa. 605, 359 A.2d 766 (1976); *Butler Area Sch. D. v. Butler Ed. Ass'n*, 481 Pa. 20, 391 A.2d 1295 (1978); *In re Duncan Trust*, 480 Pa. 608, 391 A.2d 1051 (1978); *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). Hence, the trial court erred in *sua sponte* raising the merger issue and its order granting the motion to quash the attempt–murder charge cannot be supported by the merger doctrine.

Further, the order cannot be supported by *Campana*, which was presented to the trial court, for the same reasons we previously detailed. *Campana* does not bar a subsequent prosecution for an offense which is unknown to the Commonwealth when charges arising from the same transaction are brought because, under such circumstances the Commonwealth is powerless to prosecute the unknown offense. *Commonwealth v. Washington*, supra. Instantly, the Commonwealth was equally powerless to bring the charges of attempt–murder, burglary, theft, and conspiracy when Waters was tried for murder because he already was convicted of those charges. While the Commonwealth might have joined in Waters' petition to withdraw his pleas,

13. Waters did not appeal that portion of the order which denied his motion to quash the charges of burglary, theft, and conspiracy. Indeed, he has filed a letter with this Court in lieu of a brief indicating reliance on the trial court's opinion disposing of the motion to quash. Accordingly, the propriety of having denied the motion as to the charges other than attempt–murder is not before us.

14. Specifically, the motion alleged Waters was being placed twice in jeopardy because he had been tried for and convicted of murder "under the same facts" and "for the same criminal action."

which was filed subsequent to Brennan's death and prior to Waters' trial for murder, doing so would not have compelled the court to grant the motion so that the charges could have been brought in the murder prosecution. Furthermore, as previously explained, in *Commonwealth v. Washington*, supra, we implicitly recognized that the Commonwealth need not join in the post-verdict motions of an accused or oppose sentencing of him in order to bring the charges on which he has been convicted in a subsequent prosecution for a previously unknown crime arising from the same episode. A fortiori, the Commonwealth instantly was not required to join in Waters' motion to withdraw his pleas. Such a ruling would create an unwarranted distinction between the two situations based solely on an accused's choice of whether to be tried or whether to plead to the initial charges. Moreover, *Commonwealth v. Washington*, supra, is imminently sound in its reasoning in that a contrary ruling would compel the Commonwealth to join in post-verdict motions, in motions to withdraw a plea or pleas, or in an appeal by an accused based on a wholly fortuitous circumstance, namely if and when a victim dies or other crime becomes known.

Accordingly, the order of the trial court quashing the attempt-murder charge must be reversed.

In No. 392, the judgment of sentence is reversed, and a new trial is granted.

In No. 207, the order granting the motion to quash is reversed.[15]

FLAHERTY, J., filed a concurring and dissenting opinion.

LARSEN, J., filed a dissenting opinion.

15. Of course, our orders today have no effect on the Superior Court's order reversing the trial court's order which denied Water's petition to withdraw his pleas since we denied the Commonwealth's petition for allowance of appeal after the Superior Court entered its order of April 28, 1978. Hence, no convictions of Waters on any charges arising from this criminal episode now exist.

FLAHERTY, Justice, concurring and dissenting.

While I am in accord with majority's order of a new trial in this case, I cannot agree with the conclusion that the jury instruction on the felony murder rule should include the charge that a defendant may be found guilty of murder of the second degree only if the homicide committed by his accomplice during the perpetration of the felony was "in furtherance of" the felony. I cannot agree that inserting this requirement into the felony murder charge adequately advances the stated policy of this Commonwealth with regard to felony murder liability. Whether the actions are in "furtherance" of the underlying felony unnecessarily clutters the issue.

I am of the opinion that the jury should be charged to the effect that so long as the energy initiating the felonious undertaking continues to pervade the felonious atmosphere created by co–felons, then, any result engendered by that felonious energy is within the purview of the felony murder doctrine and all who participate therein are equally guilty of murder.

As stated in *Commonwealth v. Yuknavich*, 448 Pa. 502, 508, 295 A.2d 290, 293 (1972):

The nature of the felony in this case [armed robbery] is such that it should be obvious to anyone about to embark on such a venture that the lives of the victims may be sacrificed in accomplishing the end. A reasonable man can be properly charged with the knowledge that the natural and probable consequences of such an act many well result in death or grievous bodily injury to those involved.

Keeping this view in mind, one can clearly see that the requirement imposed by the majority serves only to create an unwarranted technicality in the law.

A view similar to that expressed in *Yuknavich*, supra, was set forth in *Commonwealth v. Batley*, 436 Pa. 377, 391–392, 260 A.2d 793, 801 (1970):

When one considers all that transpired, it is clear beyond any reasonable doubt that, by common design and plan, Batley, with his companions, all armed, set out on the evening of March 28th to commit robbery and rape; in so doing, Batley *assumed the risk* that a killing might occur through the acts of one or more of his companions. Frick's killing *was within the orbit of the risk* of the venture to which Batley committed himself, and he made *no effort whatsoever to withdraw* from the venture until after the killing had taken place. (Emphasis supplied).

It is clear from this language that until the venture has ceased and there has been a cut–off in the chain of events attributable to the initial goal of committing the underlying felony, all parties who entered the scheme are responsible for the consequences. It is for the jury to decide whether there has been a cessation of that initial felonious energy thereby terminating liability of any accomplice(s) and I would so charge them.

LARSEN, Justice, dissenting.

The majority holds that the trial court erred in refusing to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the act causing the death was done "in furtherance of the design to commit the felony." In my opinion, the trial court was correct in refusing that requested instruction.

Murder of the second degree, "felony–murder", is defined by 18 Pa.C.S.A. § 2502(b) as a homicide "committed *while* defendant was *engaged* as a principal *or an accomplice in the perpetration of a felony* (emphasis supplied)." Nowhere in this statute are the words "in furtherance of the design to commit the felony", and the majority is legislating in engrafting this requirement into the plain meaning of the statutory language.

Consequently, I would affirm the judgment of sentence at No. 392.