J-A25023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| YUWSHA ALWAN | |
| Appellant | No. 2619 EDA 2013 |

Appeal from the Judgment of Sentence of August 16, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0012299-2011

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 19, 2014**

Yuwsha Alwan appeals the judgment of sentence entered on August 16, 2013.  We affirm.

The trial court set forth the pertinent factual and procedural history of this case as follows:

On March 31, 2008, Nicholas Pisano was shot in his apartment at 356 N. Front Street in Philadelphia.  Emergency personnel took him to Hahnemann University Hospital, where he died on that same day.  He was twenty-five years old at the time of his death.

Philadelphia Police Officer Quinten White was the first police officer to arrive at the scene of the shooting, where he observed a small quantity of marijuana on a living room table and a [MAC-10] automatic weapon in the bedroom, on the bed, partially covered by a sheet.  [Officer White] spoke to Joshua McDonald, who was in the apartment at the time of the shooting,

_____

[*]     Retired Senior Judge assigned to the Superior Court.

and who told him that two [b]lack men in their [thirties] wearing dark clothing came to the door purporting to be making a pizza delivery, and that the men shot Pisano and then fled the scene. As Officer White was pulling up to the scene, he inadvertently drove over a pizza box.

* * *

[McDonald] came to visit Pisano in the afternoon on the day of the shooting. He and Pisano watched a movie and played video games together. While the movie was playing, an African-American man with what McDonald described as a "Muslim-sounding name" came to the door and spoke with Pisano for about five minutes. Pisano briefly introduced him to McDonald, but McDonald [could] not recall his name or identify him.

Later that night, McDonald heard a knock on the door and a male voice saying "pizza delivery." Pisano replied "we already got our food[,]" as the two men had ordered delivery earlier. The voice said[,] "well, just open the door." Pisano said[,] "[i]t must be around back. It happens all the time." Again, the voice said "just open the door."

McDonald did not feel comfortable with the interaction, which did not feel "right" to him, so he retrieved the gun that Pisano had shown him earlier in the evening, which was hidden in the couch where he was sitting. As [McDonald] reached down for the gun, he heard a shot. When he looked up, Pisano had fallen. He saw someone coming through the doorway and he pointed the gun toward them and tried to shoot. When he pulled the trigger, nothing happened, but the intruder ran. He saw a second man, but did not get a good look at him. He gave a statement to [h]omicide detectives a few hours after the shooting, in which he identified the shooter as [Joseph] Harville.[1]

Trial Court Opinion ("T.C.O."), 11/13/2013, at 2-5 (citations to notes of testimony omitted).

_____

1       Harville is Alwan's nephew.

Homicide detectives found approximately seven pounds of marijuana in Pisano's apartment, which they estimated to have a street value of $31,728. They also obtained surveillance video from a security camera located outside of Pisano's apartment building. Clyde Frazier, an officer with the Philadelphia Police Department's Crime Scene Unit, recovered fingerprints from the pizza box found outside of Pisano's apartment and matched those prints to Robert Gray, Harville's life-long friend. At the time of the shooting, Gray had known Alwan through Harville for approximately three or four years.

> After finding out that his fingerprints had been identified on the pizza box and [that] the police had video footage of him with Harville outside of Pisano's [apartment] building on the night of the shooting, Gray gave a full confession to his involvement in the shooting. The surveillance video depicts Gray and Harville walking back and forth outside of [Pisano's] building, [with] Gray holding a pizza box and Harville with his hands in his pockets.
>
> In his statement of April 4, 2008, [Gray] said the following about what happened four days earlier on the night of the shooting:
>
>> [W]e just hung out for a little while, that's when [Alwan] starts talking about this dude that had all this weed. He said he just left the boy's house and the guy had like ten pounds of weed in the dryer and some on his countertop. He said the boy had a lot of money in a Nike box under the table in the back room where the dog was. [Alwan] was like 'we should roll on the boy.' He said the guy was a punk and that we wouldn't have to do nothing but scare the boy. We all agreed and then [Alwan] gave [Harville] the gun.
>
> [Gray explained that,] after ordering a pizza and driving to pick it up, the three defendants proceeded as follows:
>
>> I parked the car under the bridge around the corner from the boy's house, then me and [Harville] and [Alwan]

walked around to the house. [Alwan] walked a little bit behind us and showed us where the house was at. Then he stayed back while me and [Harville] went to the dude's house. I walked up the steps first and [Harville] was behind me. I still had the pizza with me. And when [Harville] rang the doorbell, he says '[d]elivery.' The guy inside opens the door and says 'wrong bell. You want the back.' He had a Bible in his hands and said like two more times 'you want the back.' He's like, 'I'm telling you, you got the wrong apartment. It happens all the time. You want the back door.' I said, 'no I want some weed.' He was like, 'you definitely got the wrong house.'

That's when [Harville] come up behind and he pushes past me. He knocked the pizza out of my hand when [he] pushed me. As [Harville] pushed past me, the guy must have seen the gun because he looked shocked. That's when I noticed [there] was another guy inside on the couch . . . . The guy on the couch grabs a gun from under a pillow. [He s]tood up pointing at us. At that point I ducked and started to run. That's when [Harville] shot. I was already down the steps by the time [Harville] shot then I was gone. I ran to the car and [Alwan] was already in the driver's seat. I got in the backseat and [Harville] came up behind me and got into the front passenger seat. He still had the gun in his hand. Then we just took off.

*Id.* at 3-4.

William Shute, a special agent with the Federal Bureau of Investigation, analyzed Alwan's cellular phone records from March 31, 2008 through April 10, 2008. Special Agent Shute's analysis revealed that Alwan and Gray had exchanged seventy-five calls during that period. Twenty-nine of those calls took place on the day of the shooting and twenty-three of them occurred on the following day. Alwan also made an outgoing call at 9:33 p.m. on March 31, 2008; approximately two minutes before Pisano was murdered. Based upon the location of the cellular tower that Alwan's phone

used to place that call, Special Agent Shute determined that it was made within several blocks of the shooting.

Police arrested Gray and Harville in connection with Pisano's murder. On June 13, 2011, Gray pleaded guilty to third-degree murder, conspiracy to commit murder, possession of an instrument of crime, and robbery.[2] As a condition of Gray's guilty plea, he agreed to assist the Commonwealth with the ongoing investigation and, if necessary, to testify against his co-defendants. On June 30, 2011, Gray testified at Harville's murder trial. Gray took the stand and presented an account of the shooting that conflicted with his statement to the police on April 4, 2008. Specifically, Gray testified that it was Alwan, not Harville, who shot Pisano. Gray also testified that Harville told Alwan that he did not want to participate in the robbery.

On August 30, 2011, Alwan was arrested and charged with murder, robbery, criminal conspiracy to commit robbery, possession of an instrument of crime, carrying a firearm without a license,[3] and carrying a firearm on public streets or property.[4] On August 12, 2013, Alwan proceeded to a jury trial. On the third day of Alwan's trial the Commonwealth called Gray as a witness, whereupon he offered a third mutually exclusive description of the

---

[2]    18 Pa.C.S. §§ 2502(c), 903 (18 Pa.C.S. § 2502), 907, and 3701(a)(1), respectively.

[3]    18 Pa.C.S. § 6106.

[4]    18 Pa.C.S. § 6108.

shooting. This time, Gray testified that he and Harville planned and executed the failed robbery without any assistance from Alwan. When the prosecutor confronted Gray with his conflicting statement to police shortly after the murder and the contradictory testimony that he gave at Harville's trial, Gray explained that he "had to put it on someone." Notes of Testimony ("N.T."), 8/14/2013, at 193.

Alwan testified in his own defense and denied any involvement in the shooting. During cross-examination, Alwan became irate and commenced what the trial court described as "an extended, animated, and profanity-laced speech in the presence of the jury in which he accused the prosecutor of lying and spoke at great length about his reputation as a businessman and contributor to the community." T.C.O. at 6. After Alwan's outburst, the trial court excused the jury. Defense counsel then moved for a mistrial, which the trial court denied. Because both the prosecution and the defense wanted to continue questioning Alwan, the court permitted Alwan to retake the stand. Alwan answered the remainder of the questions posed to him without incident.

On August 16, 2013, the jury found Alwan guilty of second-degree murder, robbery, and conspiracy to commit robbery. On that same day, the trial court sentenced Alwan to the mandatory term of life imprisonment for second-degree murder. The court also sentenced Alwan to a concurrent term of ten to twenty years' imprisonment for conspiracy to commit robbery.

On August 25, 2013, Alwan timely filed a post-sentence motion challenging the weight of the evidence, which the trial court denied on August 26, 2013.

On September 17, 2013, Alwan filed a notice of appeal. On September 18, 2013, the trial court ordered Alwan to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On October 31, 2013, the trial court dismissed Alwan's appointed counsel due to his failure to file a concise statement of errors complained of on appeal within the time prescribed by the trial court. The court appointed new appellate counsel on that same day. Although the trial court intended to re-issue its concise statement order, Alwan's new attorney filed a concise statement of errors complained of on appeal before the trial court did so. T.C.O. at 2. On November 13, 2013, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Where an appellant in a criminal case is ordered to file a concise statement and fails to do so, such that this Court is convinced that counsel has been *per se* ineffective, we must remand for the filing of a statement *nunc pro tunc* and for the filing of an opinion by the trial court. Pa.R.A.P. 1925(c)(3). Rule 1925(c)(3) was adopted by the Supreme Court to avoid unnecessary delays in the disposition of cases resulting from appellate counsel's *per se* ineffectiveness. In pursuit of that goal, we have held that, where an appellant's statement has been untimely filed due to counsel's *per se* ineffectiveness, we may decide the appeal on the merits if the trial court

had an adequate opportunity to prepare an opinion addressing the issues raised. **Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009).

We are cognizant that Alwan failed to comply with the trial court's order that he file a Rule 1925(b) statement within twenty-one days from September 17, 2013. Nevertheless, the trial court evidently found that Alwan's counsel was ineffective for failing to file such a statement, accepted Alwan's untimely concise statement of errors complained of on appeal, and issued a responsive Rule 1925(a) opinion. Accordingly, we decline to conclude that Alwan has waived his issues on appeal.

Alwan presents three issues for our consideration:

1. Was the evidence insufficient as a matter of law to sustain [Alwan's] convictions for second degree murder and robbery?

2. Were the verdicts of guilt for second degree murder, conspiracy, and robbery against the weight of the evidence?

3. Did the [trial] court err by refusing to declare a mistrial after it allowed [Alwan] to engage in a lengthy, emotional, profanity laden outburst that was immediately apparent as non-responsive to any questions that were asked?

Brief for Alwan at 5.

We begin with Alwan's challenge to the sufficiency of the evidence. When reviewing such challenges our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict[-]winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that

- 8 -

> the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Phillips*, 93 A.3d 847, 856 (Pa. Super. 2014) (citations omitted). Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict-winner, we must give the prosecution the benefit of all reasonable inferences that may be drawn from the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

Instantly, Alwan challenges his convictions for second-degree murder and robbery. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "Perpetration of a felony" is defined, in relevant part, as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery." 18 Pa.C.S. § 2502(d).

In *Commonwealth v. Waters*, 418 A.2d 312 (Pa. 1980), our Supreme Court discussed the elements of accomplice liability as they relate to second-degree murder:

[culpability] of persons, other than the slayer, for a homicide committed in the perpetration of a felony require[s] proof of a conspiratorial design by the slayer and the others to commit the underlying felony and [] an act by the slayer causing death [that] was in furtherance of the felony.

*Id.* at 317 (footnote omitted).

The predicate offense underlying Alwan's second-degree murder conviction was robbery. A person is guilty of robbery if, in the course of committing a theft, he inflicts serious bodily injury upon another. 18 Pa.C.S. § 3701(a)(1)(i). An act is deemed "in the course of committing a theft" if it occurs during an attempt to commit a theft or in flight after the commission of the theft. 18 Pa.C.S. § 3701(a)(2). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Alwan does not dispute that, as an accomplice to Harville and Gray, he is criminally liable for any actions they took in furtherance of the robbery. Instead, Alwan argues that the Commonwealth failed to demonstrate that either Gray or Harville were "in the course of committing a theft" at the time of the shooting. Brief for Alwan at 12 ("[F]or a second[-]degree murder conviction based on the commission of a robbery to stand, the Commonwealth was required to prove beyond a reasonable doubt that Harville and Gray took a substantial step toward the unlawful taking of movable property inside Pisano's apartment."). We disagree.

At trial, the Commonwealth presented evidence that Alwan formulated the plan to steal money and marijuana from Pisano's apartment. N.T.,

8/14/2014, at 145. The evidence also demonstrated that Alwan provided Harville with a firearm and purchased a pizza, which the trio envisioned would serve as a ploy to enter into Pisano's apartment. *Id.* at 146-47. Concerned that Pisano would recognize him if he participated in the robbery, Alwan showed his co-conspirators the exact location of Pisano's apartment but stayed behind and waited in the driver's seat of the getaway car. *Id.* at 147-49.

This evidence amply supports the conclusion that Harville fatally shot Pisano during an attempt to deprive Pisano of his property. 18 Pa.C.S. § 3701(a)(1)-(2). Indeed, the Commonwealth presented direct evidence—in the form of Gray's initial confession to police—that the three intended to steal large amounts of money and marijuana from Pisano. It is irrelevant that the co-defendants failed to remove any of Pisano's property from the apartment due to unanticipated circumstances. The mere proof of an attempted theft is sufficient to establish the "in the course of committing a theft" element of robbery. *Commonwealth v. Sanchez*, 36 A.3d 24, 41 (Pa. 2011).

Next, Alwan argues that the Commonwealth failed to demonstrate that the killing occurred "in furtherance" of the robbery. Brief for Alwan at 14. Specifically, Alwan posits that "shooting Pisano could not have been 'in furtherance' of the [robbery] because doing so actually *thwarted* the planned theft of [Pisano's] drugs." *Id.* at 15 (emphasis in original). This argument is based upon a misunderstanding of the applicable law.

- 11 -

When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer [that] the killing was malicious from the fact [that] the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, **knew or should have known that death might result from the felony.**

*Commonwealth v. Lambert*, 795 A.2d 1010, 1023 (Pa. Super. 2002) (quoting *Commonwealth v. Legg*, 417 A.2d 1152, 1154 (Pa. 1980)) (emphasis added).

Hence, it is immaterial whether Alwan actually anticipated that Pisano would be killed in furtherance of the conspiracy. The only relevant inquiry is whether the evidence adduced at trial was sufficient to support a finding that Alwan knew or should have known that the planned robbery, due to its inherent dangerousness, carried the possibility of death. *Lambert*, 795 A.2d at 1023; *see also Commonwealth v. Middleton*, 467 A.2d 841, 848 (Pa. Super. 1983).

Here, the Commonwealth presented ample evidence to support the jury's finding that Alwan either knew or should have known that the robbery, which Alwan planned and supervised, carried with it the possibility of death. The same evidence that defeats Alwan's first sufficiency argument also precludes relief here. Alwan, knowing that Pisano had "a lot of money" and "like ten pounds of weed" in his apartment, enlisted Gray and Harville to rob Pisano, whom Alwan described as a "punk." T.C.O., 11/13/2013, at 3. Alwan then gave Harville a firearm, directed his co-conspirators to Pisano's apartment building, and waited behind in the driver's seat of the getaway

- 12 -

car. All of this evidence supports the jury's conclusion that Alwan either knew or should have known that death might result from the robbery. Consequently, the evidence was sufficient to enable a fact-finder to conclude beyond a reasonable doubt that Alwan was guilty of robbery and second-degree murder.

In his second issue, Alwan argues that his convictions for second-degree murder, criminal conspiracy, and robbery were against the weight of the evidence.[5] Specifically, Alwan emphasizes that, although Gray's initial confession to the police implicated Alwan as the mastermind of the robbery, Gray later disavowed that version of the events. Indeed, at Harville's trial, Gray testified that Alwan was the gunman who shot and killed Pisano. Then, at Alwan's trial, Gray testified that he and Harville devised and executed the plan to rob Pisano without any assistance from Alwan. In light of these conflicting accounts of the murder, Alwan contends that the jury's verdict could only have been based upon "speculation, conjecture, and guesswork." Brief for Alwan at 17.

When reviewing a trial court's ruling that the verdict was not contrary to the weight of the evidence, we review the trial court's exercise of

_____

[5] A challenge to the weight of the evidence must be "raised with the trial court in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). Instantly, Alwan preserved his challenge to the weight of the evidence in his post-sentence motion. Alwan's Motion for Post-Sentence Relief, 8/25/2013, at 1.

discretion, rather than the underlying question of whether the verdict is against the weight of the evidence. ***Commonwealth v. Smith***, 985 A.2d 886, 888 (Pa. 2009). Because the jury is free to believe all, part, or none of the evidence presented, a new trial should not be granted merely because the judge, on the same facts, would have arrived at a different conclusion. ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000). Instead, "the role of the trial judge is to determine that[,] notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** Hence, the trial court should award a new trial only when the jury's verdict is "so contrary to the evidence as to shock one's sense of justice[,] and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Commonwealth v. Brown***, 648 A.2d 1177, 1189 (Pa. 1994). In effect, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 609 (Pa. 2011).

This does not mean that the trial court's discretion to grant or deny a motion for a new trial based upon a challenge to the weight of the evidence is unrestrained. In describing the limits of a trial court's discretion, our Supreme Court has explained as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice,

personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Widmer*, 744 A.2d at 753 (quoting *Coker v. S.M. Flickinger Co.*, 625 A.2d 1181, 1184-85 (Pa. 1993)).

The trial court explained its rejection of Alwan's challenge to the weight of the evidence as follows:

[Gray's] behavior at trial did not call his initial statement into serious question. In fact, his attempts in Harville's proceedings to put the lion's share of guilt on [Alwan,] and in [Alwan's] proceedings to shift the blame to Harville, were transparent to this [c]ourt, as they must have been to the jury as well.

T.C.O. at 11.

The trial court did not abuse its discretion in ruling that Alwan failed to establish the sort of injustice that would require a new trial. The record is devoid of any indication that the trial court acted in an unreasonable or arbitrary manner. Nor has Alwan alleged that the trial court acted with partiality, prejudice, bias, or ill will. The jury, as the fact-finder, was free to evaluate the testimony of the witnesses and to determine the weight that should be assigned to the evidence. *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995). In rendering a guilty verdict, the jury clearly indicated that it found Gray's initial confession to the police, which he then reaffirmed at his guilty plea hearing, to be credible and his later renunciation

of that narrative to be incredible. Consequently, Alwan's challenge to the weight of the evidence must fail.[6]

In his third and final issue, Alwan contends that the trial court erred in denying his motion for a mistrial after he engaged in a lengthy outburst in the presence of the jury. *See e.g.,* N.T., 8/15/2013, at 105 ("I'm standing up for myself. All y'all wrong. You've been lying since fucking day one and I'm tired of this shit.").

Our standard of review of a court's denial of a motion for mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

---

[6] Alwan's contention that the jury's verdicts were against the weight of the evidence because they were inconsistent is similarly unavailing. Here Alwan argues that, because the jury found him not guilty of firearms not to be carried without a license and possessing instruments of crime, the jury clearly disbelieved Gray's initial statement to the police. According to Alwan, the fact that the jury also convicted him of conspiracy, robbery, and second-degree murder demonstrates that the jury's verdicts are contrary to the evidence. It is well established that, even where two verdicts are logically inconsistent, such inconsistency alone is not sufficient grounds for a new trial or for reversal. *Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012).

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003) (internal citations and footnote omitted).

Alwan's argument on this issue consists of little more than a summary of his remarks at trial coupled with a conclusory assertion that his "character evidence, as well as his own testimony, was irreparably tainted by the [c]ourt's decision to allow his non-responsive outburst." Brief for Alwan at 19. Alwan provides no authority to support his claim that he was deprived of a fair trial, nor does he explain how the trial court abused its discretion in denying his motion for a mistrial. Accordingly, Alwan has waived this issue due to his failure to develop the argument or to cite any legal authority in support of his position. *See* Pa.R.A.P. 2119(b); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/19/2014